

So Ordered.

Dated: September 25, 2020

G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re:

Edward Earl Tolliver and
Linda Ann Tolliver,

Debtors.

Case No. 20-22408-gmh
Chapter 13

---

**DECISION AND ORDER SUSTAINING OBJECTION TO CONFIRMATION OF PLAN AND DENYING CONFIRMATION**

---

Trinity Financial Services LLC has an allowed claim for more than $43 thousand secured by a mortgage on the debtors' principal residence. The debtors' plan states that the value of their residence is only about $35 thousand and that the City of Milwaukee has a lien on the property securing payment of about $3 thousand in property taxes with priority over Trinity's mortgage. The debtors propose to bifurcate Trinity's claim into a secured claim for about $32 thousand and an unsecured claim for the rest, to pay the secured claim with interest, and to pay nothing on the unsecured claim.

Trinity objected that the court cannot confirm the debtors' plan because it proposes to modify Trinity's rights as the holder of "a claim secured only by a security interest in real property that is the debtor[s'] principal residence", which is

impermissible in a chapter 13 plan. 11 U.S.C. §§1322(b)(2) & 1325(a)(1). The debtors responded that, notwithstanding this generally applicable rule, they can modify Trinity's rights as a claim holder because "the last payment on the original payment schedule for [the] claim" was due years ago. §1322(c)(2). Trinity replied that this exception to the anti-modification rule does not apply because the debtors agreed to modify the loan at issue, extending the "original payment schedule" through October 1, 2041, long after the "final payment under the plan" will be due. *Id.*

The parties reference the relevant provisions of the Bankruptcy Code. Section 1322(b)(2) ordinarily precludes a chapter 13 plan's modification of the rights of the holder of "a claim secured only by a security interest in real property that is the debtor's principal residence". But §1322(c)(2) provides an exception to this general rule against modification: a chapter 13 plan may modify the rights of the holder of "a claim secured only by a security interest in real property that is the debtor's principal residence" if "the last payment on the original payment schedule for [the] claim . . . is due before the date on which the final payment under the plan is due". Whether §1322(c)(2) applies here—and whether, as a result, the debtors' plan can be confirmed over Trinity's objection that it violates §1322(b)(2)—turns on when the last payment on the "original payment schedule" for Trinity's "claim" is (or was) due.

The parties primarily contest the meaning of "original payment schedule" in §1322(c)(2), but that term is easily construed. "Unless otherwise defined"—and "original payment schedule" is not—"statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)); see also *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010) (construing an undefined term used in §1325 of the Bankruptcy Code based on "the ordinary meaning of the term"). Ordinarily, as used in §1322(c)(2), the adjective "original" means "of or relating to a rise or beginning" or "existing from the start". *Webster's Third New International Dictionary* 1592 (2002) (cross-referencing the

synonyms "initial", "primary", and "pristine"); see *id.* at 1163 (defining "initial" in relevant part to mean "of or relating to the beginning" or "marking the commencement"); *id.* at 1800 (defining "primary" in relevant part to mean "first in order of time or development"); *id.* at 1804 (defining "pristine" in relevant part to mean "belonging to the earliest period or state"). As used in §1322(c)(2), the noun phrase "payment schedule" (in which "payment", a noun, is used as an adjective, or attributive noun, to modify the noun "schedule") ordinarily means "a usu[ally] written plan or proposal for future procedure typically indicating the objective proposed" and "the time and sequence of each operation"—i.e., a "schedule", *id.* at 2028—for which the objective is "the discharge of a debt or an obligation" and each operation is "the act of paying or giving compensation", *id.* at 1659 (defining "payment"). Thus, the "original payment schedule" for a "claim" is the first or earliest plan for paying off the debt, which is "the liability on the claim", 11 U.S.C. §101(12).

What, though, is Trinity's "claim" for purposes of §1322(c)(2)? The Bankruptcy Code defines a "claim" as a "right to payment". §101(5)(A). "State law usually determines whether a person has such a right," *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017), and "governs the substance of claims", *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007). The parties agreed that, for the sake of resolving Trinity's objection to confirmation, the court can rely on the documents filed with its proof of claim to determine the substance of Trinity's claim.

The documents filed with Trinity's proof of claim show the following: In 2007 Legacy Bank loaned the debtors $30 thousand, which the debtors agreed to repay over three years with variable-rate interest. To secure repayment of the loan, the debtors granted Legacy Bank a mortgage on their residence. In 2011 the debtors agreed to modify the 2007 agreement to provide for repayment of the then-outstanding amount of more than $31 thousand over 30 years with 4% interest in exchange for being deemed current on payments. By a series of transfers over several years, Trinity succeeded to the

rights of the lender under the modified agreement and came to hold the mortgage securing the debtors' repayment of the debt under its terms. Trinity's present right to payment arises from the 2011 modified agreement.

The parties do not address what law governs Trinity's claim. Under the law of Wisconsin, the forum state, contract rights are "determined by the law of the [jurisdiction] with which the contract has its most significant relationship." *Jafari v. Wynn Las Vegas, LLC (In re Jafari)*, 569 F.3d 644, 649 (7th Cir. 2009) (quoting *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 671 (Wis. 2002)). Similarly, under federal common law, determining what state's law governs a contract "requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts [in the transaction at issue] in order best to accommodate the equities among the parties to the policies of those states." *Id.* at 648 (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161–62 (1946)). Thus, while "there is a tension as to whether bankruptcy courts follow federal common law choice-of-law principles or the forum state's choice-of-law principles", and "[t]he Seventh Circuit has not reached the question", *id.* at 648–49, as they apply here, the principles are the same.

Applying either federal or forum-state choice-of-law principles, Wisconsin law governs both the 2007 agreement and the 2011 modified agreement. The 2007 agreement expressly provides that it is governed by Wisconsin law, the parties to it listed Wisconsin addresses, and it concerns an interest in property located in Wisconsin. Nothing in the 2011 modified agreement affects any of this, and nothing in either agreement suggests that any jurisdiction other than Wisconsin has any significant connection to the transaction, much less a more significant one.

Wisconsin appears to follow the traditional rule of contract modification that "[a]n agreement changed by the mutual assent of the parties becomes a new agreement consisting of new terms and as much of the old agreement as the parties have agreed will remain unchanged", 17A C.J.S. *Contracts* §557 (West 2020). See *Estreen v. Bluhm*,

255 N.W.2d 473, 479 (Wis. 1977) (citing 17A C.J.S. *Contracts* §379 (1963), which has since been renumbered) (explaining that "a modified agreement should be construed in connection with the original contract" because "[w]hile the effect of the modification may be the creation of a new contract, that contract consists of not only the new terms agreed upon, but also as many of the terms of the original contract which were not abrogated by the modification"); cf. *Kohlenberg v. Am. Plumbing Supply Co.*, 263 N.W.2d 496, 500 (Wis. 1978) ("[I]t is generally held that the existence of an agreement which is in substitution or modification of a previous contract must be established in the same way as any other contract."); *Morley-Murphy Co. v. Van Vreede*, 269 N.W. 664, 666 (Wis. 1936) (explaining that "[c]hanging the date of payment . . . in a contract is, under all of the authorities, a material alteration" and that "to hold [a] nonconsenting party under such circumstances would be to make for him a contract to which he never agreed"). Thus, under Wisconsin law, the debtors' 2011 agreement to modify the terms of their 2007 agreement with Legacy Bank resulted in a new contract.

The debtors were deemed current by the 2011 modified agreement, and any right to payment going forward, including Trinity's claim in this case, arises from that agreement, not the original 2007 agreement. The first and only schedule for payment under the 2011 modified agreement ends in 2041, long after the final payment will be due under the plan in this case. Accordingly, the debtors cannot rely on §1322(c)(2) for authority to propose a chapter 13 plan that modifies Trinity's rights as the holder of a claim secured only by an interest in their principal residence.

For these reasons, IT IS ORDERED that Trinity's objection to confirmation of the plan is sustained, and confirmation of the plan is denied.

IT IS FURTHER ORDERED that by no later than **30 days after the date on which this order** is entered the debtors must file and serve a feasible amended plan, convert this case to a case under another chapter of the Bankruptcy Code, or voluntarily dismiss

this case. The court may deem the debtors' failure to timely comply with this order to be cause for dismissal of the case under 11 U.S.C. §1307(c) without further notice.

#####